UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT W. HILBORN and JEAN ANNE S. HILBORN,<br><br>      Plaintiffs,<br><br> v.<br><br>METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE CO.,<br><br>      Defendant. | Case No. 2:12-cv-00636-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it Plaintiffs' Motion to Compel Complete Responses to Discovery (Dkt. 25). For the reasons explained below, the Court will grant the motion in part and deny the motion in part.

**ANALYSIS**

**I. Motion to Compel**

The Court may order the "discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b) (1). Relevant evidence is any evidence tending to make the existence of any consequential fact "more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. Although viewed in light of Rule 401, "the question of relevancy is to be more loosely construed at the discovery stage than at the trial . . . ." See 8 Wright, Miller, and Marcus, Federal Practice

& Procedure, § 2008 at p. 125 (2010). That the evidence might be inadmissible does not preclude discovery so long as the request "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ.P. 26(b)(1).

Here, the discovery process between the parties has been dysfunctional at best. The parties have tried on several occasions to resolve their disputes through the Court's informal mediation process with Court staff. Some progress has been made, but at the expense of delaying the case. After the parties and Court staff ultimately agreed that any remaining discovery disputes should be briefed for formal resolution, the Hilborns filed their pending Motion to Compel.

The Hilborns cover a lot of ground in their motion, but it is a bit disjointed in its organization. There is clearly frustration on the part of counsel, and based upon Court staff's involvement in the informal mediation process, some of that frustration is understandable – Metropolitan has been slow to engage in discovery, with a false belief that the Court's deadlines can be continuously extended. Still, the pending motion lacks the clarity needed to easily resolve it. In the end, the motion makes what appears to be six general requests under the relief requested section of the brief. The Court will use those six requests to organize the Court's decision.

    **1.**    **Request For Claims File, Full Responses To Discovery Requests, Waiver of Privilege, and *In Camera* Inspection.**

The first three requests appear to be related and stem mostly from the parties'
disagreement about whether certain material is covered by the attorney-client privilege or
work product doctrine. Moreover, Metropolitan states that it will certify that it has
produced all requested documents to the Hilborns except those "withheld under a claim
of privilege. . . ." *Def.'s Resp.*, p. 8, Dkt. 36. Accordingly, the Court will address these
three requests together, in the context of privilege and the work produce doctrine.

### A.    **Attorney-Client Privilege**

Generally, the party seeking to withhold documents from discovery on the basis of
privilege and work product has the burden of proving that those doctrines apply to the
documents in question. *See In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007).
The attorney-client privilege is governed by Idaho law. See Fed.R.Evid. 501. The
applicable Idaho rule is Idaho Rule of Evidence 502 that provides a privilege for, among
other things, "confidential communications made for the purpose of facilitating the
rendition of professional legal services to the client which were made . . . between the
client or the client's representative and the client's lawyer . . . ."

The attorney-client privilege protects confidential disclosures made by a client to
an attorney in order to obtain legal advice as well as an attorney's advice in response to
such-disclosures. *See United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996). The privilege
only protects disclosure of communications; it does not protect disclosure of the
underlying facts by those who communicated with the attorney. *Upjohn Co. v. United*

*States*, 449 U.S. 383, 395 (1981). That a person is a lawyer does not make all communication with that person privileged. *Id*.

Additionally, as both parties have recognized, this Court recently issued a decision in *Stewart Title Guar. Co. v. Credit Suisse*, 2013 WL 1385265 (D.Idaho 2013) addressing the extent of the attorney-client privilege in bad faith cases. In that case, the Court indicated that it believed the Idaho Supreme Court would agree with the Washington Supreme Court's holding in *Cedell v. Farmers Insurance Co. of Washington*, 295 P.3d 239 (Wash.Sup.Ct. 2013). In *Cedell*, plaintiff Cedell filed a claim with Farmers Insurance after his home burned down. Farmers hired attorney Ryan Hall to provide coverage advice and also to investigate the claim. Farmers delayed paying the claim, prompting Cedell to sue for bad faith.

In discovery, Cedell sought to compel production of communications between Farmers and attorney Hall. Farmers objected on the ground of privilege, claiming that attorney Hall was retained to give legal advice on coverage issues. The Washington Supreme Court, sitting en banc, rejected Farmers' broad claim of privilege. The court began its analysis by discussing what information the insured needs to pursue his bad faith action:

> The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith. Implicit in an insurance company's handling of claim is litigation or the threat of litigation that involves the advice of counsel. To permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired

or employed by insurers would unreasonably obstruct discovery of
meritorious claims and conceal unwarranted practices.

*Id*. at 244-45.

Because of this need, the court held that the insured is entitled "to broad
discovery, including, presumptively, the entire claims file." Id. at 247. More
specifically, "[w]e start from the presumption that there is no attorney-client
privilege relevant between the insured and the insurer in the claims adjusting
process . . . ." *Id*. at 246. The insurer may overcome the presumption of
discoverability by showing that "its attorney was not engaged in the quasi-
fiduciary tasks of investigating and evaluating or processing the claim, but was
instead providing the insurer with counsel as to its own potential liability; for
example, whether or not coverage exists under the law." *Id*. "Upon such a
showing, the insurance company is entitled to the redaction of communications
from counsel that reflected the mental impressions of the attorney to the insurance
company, unless those mental impressions are directly at issue in their quasi-
fiduciary responsibilities to their insured." *Id*.

Metropolitan argues that the Court's holding in *Stewart Title* is
distinguishable because in that case this Court applied Idaho's Joint Client
exception to conclude that the Idaho Supreme Court would adopt the reasoning in
*Cedell*. While it's true that the Court was required to go a step further and apply

the Joint Client exception in *Stewart Title* because the insurer in that case hired separate law firms who worked alongside each other to defend and investigate the claims, *Cedell* is nevertheless persuasive and applicable here without having to go that extra step. The only question here is whether Metropolitan's attorneys, Daniel Thennel and his associates, both investigated the claim and provided coverage advice as Attorney Hall did in *Cedell*.

That question must be answered in the affirmative. While deposing the insured in this case, Mr. Thennel himself stated that he "was retained by Metropolitan to assist it in its coverage investigation and determination . . . ." *Jean Hilborn Depo.*, 7:17-20, Dkt. 44-3. Mr. Thennel's partner, Jillian Hinman, also stated that "as part of the ongoing claims investigation, [she] placed a phone call to Border Patrol Agents who were present at the scene of the fire." *Hinman Decl.*, p. 1, Dkt. 28. Accordingly, the Court finds that Daniel Thennel and his law firm were engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim.

Accordingly, the Court presumes Metropolitan must turn over its entire claims file, and will order it to do so. If Metropolitan believes it can show that any documents in that file related only to providing Metropolitan with counsel as to its own potential liability, Metropolitan may submit those documents to the Court for

an *in camera* review, and the Court will determine whether they must be disclosed to the Hilborns.

Metropolitan must also certify that it has produced everything in its claims file and everything the Hilborns have asked for except any documents provided to the Court for *in camera* review. This is in accordance with Metropolitan's promise in the email sent by its counsel to the Hilborns' counsel. *Thenell Decl.*, Ex. 13, Dkt. 38-13. This should resolve the majority of the issues raised in the Motion to Compel.

B.     **Work Product Doctrine**

The work product doctrine, codified in Rule 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004). Such documents may only be ordered produced upon an adverse party's demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." See Rule 26(b)(3).

As explained in *Stewart Title*, the source of the work product doctrine is Federal Rule of Civil Procedure 26(b)(3). Under that Rule, "opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mutual Automobile Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992).

MEMORANDUM DECISION AND ORDER - 7

Those elements are met in this case. "In a bad faith insurance claim settlement case, the strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue." *Id.* (internal quotations omitted). This information is solely in the possession of Metropolitan. *See  Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, 2011 WL 4914941 (S.D.Cal. Oct. 17, 2011) (holding that compelling need existed for producing work product in bad faith case where information was in "exclusive control" of insurer and insured had "no other way to probe reasons [insurer] denied [the insured's] claim"). Thus, the work product doctrine likewise does not apply in this case as a means of withholding documents.

### 2.    Depositions

The Hilborns next ask the court to order Metropolitan to produce witnesses already deposed prior to receiving complete discovery responses for additional examination at Metropolitan's expense. A review of the Hilborns' briefs and supporting affidavits seem to suggest they are referring to several Metropolitan individuals, including Dan Reist, Larry Cholewin, James Nickel, James Lindsay, and James Lawson. *Whitehead Aff.,* Dkt. 30. However, the Court cannot be sure. Although it appears that Metropolitan has, in fact, delayed relevant discovery responses until after relevant depositions were conducted, the Hilborns have not made a clear enough case for the Court to make that call. For instance, the Hilborns have not made any specific showing

that the delayed disclosure of any specific piece of evidence prevented counsel from properly deposing a specific witness on a specific issue. Without such information, the Court cannot grant the request to re-open any depositions.

The Court notes that it appreciates and recognizes Plaintiffs' counsel's attempt to move this case forward as required by the deadlines set forth in the Court's CMO, and the Court is not at all persuaded by Metropolitan's argument that Plaintiffs elected to take the depositions without sufficient discovery. As the Court just explained, it appears Metropolitan has delayed the discovery process in this case. Thus, as the Court will explain at the conclusion of this Order, a more definite and specific request to re-open a specific deposition may be in order, and the Court may reconsider its decision.

### 3.      Rule 30(b)(6) Deposition

In the fifth request under the relief requested portion of their brief, the Hilborns ask the Court to order Metropolitan to produce witnesses in compliance with their "Notice of Taking Depositions 30(b)(6)." *Pl.'s Br.* at 18, Dkt. 25-1. However, it is unclear to the Court exactly what they want. In the body of the brief, they seem to suggest counsel was unable to properly depose 30(b)(6) witnesses because of delayed discovery responses under the guise of expert testimony. The Court is not sure how these arguments and request relate. Therefore, the Court will not order the requested relief at this point.

### 4.      Sanctions

Finally, the Hilborns ask the Court to sanction Metropolitan and its counsel for "failing to comply with the applicable rules of discovery." *Pl.'s Br.* at 18, Dkt. 25-1. Although the Court has some serious concerns that Metropolitan and its counsel have played hide the ball and delayed discovery in this case, the Court will not order sanctions – yet.

However, the Court will make this final point. It appears to the Court that a major reason the Hilborns have had a difficult time explaining why they need to retake some depositions is because Metropolitan has been less than forthcoming in discovery. After Metropolitan provides the Hilborns with all remaining documents and certifies that it has done so as discussed under the privilege section above, the Hilborns may renew their request to re-open certain depositions, including 30(b)(6) depositions if they can show that late-disclosed discovery was crucial to those depositions. If the Hilborns make such a motion, it must be very concise, specific and limited. That is, the Court would need to know exactly what late-disclosed information is crucial, and why it is important that the Hilborns be allowed to ask a specific witness about that specific information.  If the Court determines that any deposition must be reopened because of information withheld by Metropolitan, the Hilborns can request, and the Court will likely impose, appropriate sanctions against Metropolitan, which could include costs and fees incurred for bringing this motion, any subsequent motion and retaking the depositions.

## II.    Motion for Protective Order

The motion for protective order has been pending for months, but has not been fully briefed. The parties agreed to try to work toward a resolution of the matter during the several discovery conferences with Court staff. Although it is possible that the issue is now fully resolved, it is likely that the Court's decisions here may affect the terms of the protective order.  Accordingly, the Court will deem the motion moot. Metropolitan may refile the motion or file an amended motion if it still feels it needs Court intervention.

ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion to Compel Complete Responses to Discovery (Dkt. 25) is **GRANTED IN PART** and **DENIED IN PART** as explained above. Metropolitan shall produce all documents to the Hilborns and provide this Court with any documents claimed to be privileged for *in camera* review by no later than 14 days from the date of this Order.

2. Defendant's Motion For Protective Order (Dkt. 17) is **DEEMED MOOT**.

DATED: November 15, 2013

B. Lynn Winmill
Chief Judge
United States District Court