UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT W. HILBORN and JEAN ANN S. HILBORN,<br><br>    Plaintiffs,<br><br>v.<br><br>METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE CO.,<br><br>    Defendant. | Case No. 2:12-cv-00636-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it Plaintiffs' Rule 59(e) Motion to Alter or Amend Judgment or, in the Alternative, Motion for New Trial (Dkt. 173). For the reasons explained below, the Court will grant the motion for a new trial.

# ANALYSIS

Plaintiff Robert Hilborn[1] asks the Court to alter or amend the verdict against him by entering judgment in his favor or by ordering a new trial. Both requests are brought pursuant to Federal Rule of Civil Procedure 59. Although Robert references only 59(e) in the title of his motion, he references Rule 59 generally throughout his brief, and he references the standard under Rule 59(a) and cites cases addressing Rule 59(a), such as

---

[1] The Court will refer to Robert Hilborn as Robert and Jean Ann Hilborn as Jean Ann throughout this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 1**

*Murphy v. City of Long Beach,* 914 F.2d 183 (9th Cir. 1990). *Plf. Br.,* p.2, Dkt. 173-1. Metropolitan addresses such cases as well. *Def. Br.* p.2, Dkt. 183.

The specific standard for altering or amending a judgment is found in Rule 59(e), while the specific standard for ordering a new trial is found in Rule 59(a). Accordingly, the Court will address the motion to alter or amend under Rule 59(e), but will address the motion for new trial under Rule 59(a), as required by the rule.

**1.     Rule 59(e) Motion to Alter or Amend Judgment**

District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington Northern Santa Fe R. Co.,* 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan,* 759 F.3d 1117, 1121 (9th Cir. 2014). (*Citing Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000)). Typically, a district court may grant a Rule 59(e) motion where it "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (Citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir.1999) (en banc) (*quoting 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999)).

None of these grounds are present in this case. In fact, Robert makes no real attempt to assert them. Instead, he focuses his arguments almost exclusively on matters more appropriately addressed under Rule 59(a). Accordingly, Robert's Rule 59(e) motion to alter or amend the judgment will be denied, but the Court will consider his arguments as they apply to his Rule 59(a) motion for new trial.

2.  **Rule 59(a) Motion for New Trial**

Rule 59(a) states that the Court may grant a new trial on all or some of the issues, and to any party, "after a jury trial, for any reason for which a new trail has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The Ninth Circuit has not specified the grounds on which a motion for a new trial may be granted. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Instead, "the court is bound by those grounds that have been historically recognized." *Id.* (Internal citation and quotation omitted). Those "grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id.* (Internal quotation and citation omitted).

The standard set forth by the Ninth Circuit is that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (Internal quotation and citation omitted). Thus, "[u]pon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* (Brackets in original)(Internal quotation and citation omitted).

Here, Metropolitan had the burden at trial of proving by a preponderance of the evidence that Robert made material misrepresentations in his insurance claim. In its brief, Metropolitan acknowledges that it had this burden at trial. *Def. Br.,* p. 4, Dkt. 183.

In his Rule 59(a) motion, Robert essentially argues that there was no evidence to support the jury's finding that he willfully misrepresented a material fact about his claim for property lost in the fire. As the Court instructed the jury, a representation is material only if it is of such a nature that knowledge of the truth would affect the insurer's decision-making process. Inst. 18, Dkt. 157.

Metropolitan suggests there was ample evidence to support the jury's conclusion that Robert willfully misrepresented a material fact about his claim. First, Metropolitan argues that because Jean Ann did not join the pending motion to alter or amend the judgment against her on the material misrepresentation of a claim assertion, the only logical inference is that Robert concedes that Metropolitan proved at trial that Jean Ann did, in fact, willfully make a material misrepresentation.

That is not the only logical inference – it simply means Jean Ann is not asking the Court to alter or amend the judgment against her. There could be many reasons for her decision – tactical or otherwise. First of all, as to Robert, the jury was only asked to determine whether Metropolitan proved that he willfully misrepresented a material fact about his insurance claim. Dkt. 161. But as to Jean Ann, the jury was asked two questions – each containing two alternative ways for denying Jean Ann's legal claim. In the first question, the jury was asked to determine whether Metropolitan proved that Jean Ann caused the fire *or* directed another to cause the fire. In the second question, the jury was

**MEMORANDUM DECISION AND ORDER - 4**

asked to determine whether Metropolitan proved that Jean Ann willfully misrepresented a material fact about her claim *or* about the cause of the fire. An affirmative answer by the jury to either part of either question meant Jean Ann did not prove her legal claim.

Thus, if there was sufficient evidence for the jury to find that Metropolitan proved its affirmative defense that Jean Anne caused the fire, directed another to cause the fire, or willfully misrepresented a material fact about the cause of the fire, then she could not prevail on her legal claim regardless of whether the jury also determined that she willfully misrepresented a material fact about her insurance claim. In fact, there is no real way to even determine whether the jury found that Jean Ann misrepresented a material fact about the cause of the fire or about her claim for lost property, or both, because that distinction was of no consequence. Therefore, the question was not broken out for the jury. Thus, even if the Court determined that a jury finding that Jean Ann misrepresented a material fact on her insurance claim should be overturned, she would be in the same position as she is now.

Accordingly, Metropolitan's assertion that Plaintiffs are conceding that Jean Ann did, in fact, make material misrepresentations about her claim is not the only logical inference to be drawn from her decision not to join in Robert's motion. It is also quite logical that Plaintiffs believe there was sufficient evidence to support the jury's verdict on at least one of the other three defenses against Jean Ann, making a her joinder in the motion pointless.

Moreover, the Court specifically instructed the jury that "[u]nder fire policies in Idaho the actions of each insured must be considered separately and any penalty or

**MEMORANDUM DECISION AND ORDER - 5**

exclusion based on intentional acts or material misrepresentation applies only to the guilty insured." Jury Inst. 15, Dkt. 157. Metropolitan acknowledges this as well. *Def. Br.,* p. 4, Dkt. 183. Thus, the claim that Robert willfully made material misrepresentations is separate from the claim that Jean Ann willfully made material misrepresentations.

Regardless, the jury verdict against Jean Ann stands. Accordingly, the Court will address Robert's motion with the understanding that the verdict stands against Jean Ann. That is, Metropolitan proved both of its affirmative defenses against Jean Ann Hilborn – that she either caused the fire or directed another to do so, and that she willfully made material misrepresentations about the cause of the fire or her claim for lost property.

In this vein, Metropolitan argues that there was evidence at trial that Robert collaborated with Jean Ann and participated in the inventory process. To support this assertion, Metropolitan first points to testimony from Robert's granddaughter, Rachel, and from defense expert William Hight. When asked about whether Robert helped prepare the inventory of damaged or destroyed personal property, Rachel testified, "I think he did." *Tr., Aug. 28, 2014,* 20:3-14, Dkt. 174. Mr. Hight stated that "[t]he forms that were submitted with a proof of loss contained an extensive list of contents that were prepared in handwriting form, I think by the involvement of all the insureds; at least that's what I recall from the – from the discovery that was conducted." *Tr., Sept. 2, 2014,* 35:34 – 36:3, Dkt. 179.

The only other evidence Metropolitan relies upon in support of the jury's finding that Robert willfully misrepresented a material fact about his claim is that the jury need not believe Robert when he testified that he did not misrepresent anything on his

**MEMORANDUM DECISION AND ORDER - 6**

insurance claim, that he was motivated by his desire to move to California, that he gave Jean Ann authority to sign his proof of loss, and defense expert Hight's "arson for profit" testimony.

A conclusion that Robert willfully misrepresented a material fact on his insurance claim based upon such flimsy evidence is troubling to the Court. First, both Rachel's and Hight's testimony about Robert participating in the inventory was equivocal – "I think he did," and "I think by the involvement of all the insureds; at least that's what I recall from the – from the discovery that was conducted." On the other hand, when asked at trial whether he helped prepare the inventory, Robert stated that he "would call my wife and tell her things that I remember. I know there is (sic) things that we forgot. I know I had a letterman jacket that I forgot to put on it. But it had sentimental value, but I guess it really wasn't important to try to get it back because it's gone." *Tr., Aug. 27, 2014,* p. 9:22 – 10:4, Dkt. 166. He testified that he tried to be accurate. *Tr., Aug. 27, 2014,* p. 10:4-11, Dkt. 166. Metropolitan is correct that the jury did not have to believe Robert, but that does not make the very limited contrary testimony persuasive. Regardless, none of this testimony suggests Robert made misrepresentations.

As for Hight's testimony about "arson for profit," it must be noted that Metropolitan never asserted that Robert caused the fire, directed another to cause the fire, or made a misrepresentation about the cause of the fire. Thus, the "arson for profit" has virtually no relevance to Robert.

Finally, the motive to move to California and the power of attorney Robert gave Jean Ann must be considered in the context of the Court's impression of Robert's

**MEMORANDUM DECISION AND ORDER - 7**

cognitive abilities. As explained above, the Court has a duty to weigh the evidence as the Court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the Court's conscientious opinion, the verdict is contrary to the clear weight of the evidence. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

At the risk of sounding disrespectful, which is not the Court's intent, the Court's strong conscientious opinion of Robert, based upon the evidence presented at trial, is that he is a man of limited cognitive abilities. Given these limitations, the Court cannot overstate its concerns about the jury's conclusion that Robert willfully misrepresented a material fact on his insurance claim. His demeanor on the stand and throughout the trial evidenced a less than complete understanding of the process for submitting an insurance claim and the court proceedings. Even the questioning of him by the attorneys resembled the way a child is examined on the stand. In the Court's opinion, his decision to give Jean Ann power of attorney, or possibly her pressure that he do so, is not evidence that he authorized Jean Ann to willfully misrepresent a material fact on the insurance claim on his behalf. In fact, the evidence at trial indicated that Robert did not give the power of attorney to Jean Ann specifically for purposes of submitting the proof of loss. Rather, the evidence at trial showed that Robert, a truck driver, was on the road most of the year, and he gave Jean Ann the power of attorney so she could take care of business at home. If anything, it show's Jean Ann's control over Robert. Likewise, the Court does not recall any evidence of Robert wanting to move to California to live with Jean Ann's sister – the evidence suggested that was Jean Ann's motive.

Although the Court is concerned about a potentially orchestrated plan by Jean Ann, which could result in an insurance pay out to Robert, the Court cannot ignore Idaho law. Idaho law provides that under fire policies, the actions of each insured must be considered separately and any penalty or exclusion based on a material misrepresentation applies only to the guilty insured. Jury Inst. 15, Dkt. 157. In the Court's conscientious opinion, after weighing the evidence as the Court saw it, the verdict against Robert was contrary to the clear weight of the evidence. Accordingly, the Court will grant Robert's motion and order a new trial on only Robert's claims. If Robert prevails in a new trial, any award of damages would be his, and his alone.

## ORDER

**IT IS ORDERED:**

1. Plaintiffs' Rule 59(e) Motion to Alter or Amend Judgment or, in the Alternative, Motion for New Trial (Dkt. 173) is **GRANTED**.
2. The Court will set a new trial date in a separate notice.

DATED: April 16, 2015

B. Lynn Winmill  
Chief Judge  
United States District Court